U.S. Department of Justice

*United States Attorney*
*District of Connecticut*

FILED
2017 JUN -1 P 12: 24
US DISTRICT COURT
HARTFORD CT

*Connecticut Financial Center*
*157 Church Street, 25th Floor*
*New Haven, Connecticut 06510*

*(203)821-3700*
*Fax (203) 773-5376*
*www.justice.gov/usao/ct*

June 1, 2017

James Maguire, Esq.
Assistant Federal Public Defender
Federal Public Defender's Office
2 Whitney Avenue, Suite 300
New Haven, CT 06510

Re: United States v. Imran Khan
Case No. 17-cr120 (VLB)

Dear Mr. Maguire,

This letter confirms the plea agreement between your client, Imran Khan (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the referenced criminal matter.

**THE PLEA AND OFFENSE**

The defendant agrees to waive his right to be indicted and to plead guilty to a one-count Information charging him with exporting goods in violation of International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705(c).

The defendant understands that, to be guilty of this offense, the following essential elements of the offense must be satisfied:

1. That the defendant exported, attempted to export, or caused the export of an item from the United States;
2. That the item the defendant exported, attempted to export, or caused to be exported was controlled for export on the CCL and required an export license for the destination country;
3. That the defendant failed to obtain a license or other authorization from the Department of Commerce prior to exporting the item; and
4. That the defendant did so knowingly and willfully.

**THE PENALTIES**

This offense carries a maximum penalty of 20 years of imprisonment and a $1,000,000 fine. In addition, under 18 U.S.C. § 3583, the Court may impose a term of supervised release of not more than three years to begin after imprisonment. The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) $250,000; or (3) the amount specified in the section defining the offense, which is $1,000,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

Forfeiture

The defendant agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

**THE SENTENCING GUIDELINES**

Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce

the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) truthfully disclosing to the United States Attorney's Office and the United States Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The parties agree that the Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range. The parties also agree that the defendant's offense level for a violation of 50 U.S.C. § 1705(c) is governed by U.S.S.G. § 2M5.1.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

The parties reserve their right to present to the Court their views on the applicability of the sentencing guidelines. Further, the Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence.

The defendant understands that the Court is not bound by this agreement on the Guideline application specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside the guideline set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

The defendant and the Government further agree that all other aspects of the sentence, including the imposition of any fine and the determination of the length and conditions of supervised release, about which the parties intend to make recommendations, will be left to the discretion of the Court.

Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction and sentence. The defendant agrees not to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. Nor will he pursue such an appeal or collateral attack to challenge the sentence imposed by the Court if that sentence does not exceed 46 months of imprisonment, a three-year term of supervised release, a $100 special assessment, and a fine of not more than $10,000, even if the Court imposes such a sentence based on an analysis different from that specified above. Similarly, the Government will not appeal a sentence imposed within or above the sentencing range set forth above. The defendant acknowledges that he is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentence that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

**WAIVER OF RIGHTS**

Waiver of Right to Indictment

The defendant understands that he has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that he committed the offense set forth in the information before an indictment could be returned. The defendant acknowledges that he is knowingly and intelligently waiving his right to be indicted.

Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

Waiver of Challenge to Plea Based on Immigration Consequences

The defendant understands that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is

pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

The defendant understands that he is bound by his guilty plea regardless of the immigration consequences of the plea and regardless of any advice the defendant has received from his counsel or others regarding those consequences. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction or sentence, based on the immigration consequences of his guilty plea, conviction and sentence.

**ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA**

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

**SCOPE OF THE AGREEMENT**

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

**COLLATERAL CONSEQUENCES**

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to

the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

**SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH**

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the criminal conduct that forms the basis of the Information in this case. The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw his guilty plea.

**NO OTHER PROMISES**

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

Jacabed Rodriguez-Coss
Assistant U.S. Attorney

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

Imran Khan
The Defendant

Date: 6-1-17

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

James Maguire, Esq.
Attorney for the Defendant

Date: 6/1/17

**STIPULATION OF OFFENSE CONDUCT [AND RELEVANT CONDUCT]**

The defendant and the Government stipulate to the following offense conduct and relevant conduct that gives rise to the defendant's agreement to plead guilty to the Information:

From at least 2012 to the date of arrest, the defendant, aided and abetted by his brother, Kamran Khan, and his father, Muhamaad Ismail, was engaged in a scheme to purchase goods that were controlled under the Export Administration Regulations ("EAR") from manufacturers in the United States and abroad, and export those goods without a license to Pakistan in violation of the EAR. Imran conducted business as Brush Locker Tools or as Kauser Enterprises-USA and Kamran conducted business as Kauser Enterprises-Pakistan. An individual by the name Danish Bin Khalid received tenders, that is, a request for a product, in some cases directly from agencies of the Pakistani Government and in other cases, Khalid attempted to fill tenders that were up for public bid from the Pakistani Government. Khalid then sent email communications to the defendant and/or his father, Ismail, requesting them to procure specific products that were subject to the EAR. Kamran and/or Ismail then communicated the request to Imran. In some instances, Ismail contacted the U.S. manufacturers directly. If asked about the end-user, Imran and/or Ismail always informed the manufacturer that the product would remain in the United States or would falsely fill out an end-user certification indicating the product would not be exported.

After products were successfully purchased, they were shipped by the manufacturer to Imran at either his residence, [redacted], North Haven, CT 06473 or at Cerda Market, 209 Shelton Avenue, New Haven, CT, 06511, a business owned by Imran. The products were then shipped to Khalid at Value Additions or to Kauser Enterprises-Pakistan on behalf of either the Pakistan Atomic Energy Commission ("PAEC"), the Pakistan Space & Upper Atmosphere Research Commission ("SUPARCO") or the National Institute of Lasers & Optronics ("NILOP"), all entities listed on the U.S. Department of Commerce Entity List. A license was never obtained by Kamran, Imran, or Ismail to export any item to the designated entity, despite them being aware that a license was required prior to export.

For example, on August 18, 2012, Khalid sent Kamran a request for quotation ("RFQ") via email for several items, including an Ortec Alpha Duo Spectrometer, an item subject to the EAR. In the email message, Khalid warned: "Just don't ask these items for Pakistan. Also don't go all the Items at one time. Ask quotation partially. Act carfully (sic)." On August 19, 2012, Kamran forwarded the email from Khalid, including the warning, to Imran. On August 22, 2012, Imran sent an RFQ to the manufacturer of the Ortec Alpha Duo Spectrometer. On August 23, 2012, the manufacturer provided Imran with a form end-user statement. The form stated, in pertinent part:

> As a supplier of commodities listed on the Commerce Control List (CCL), we are required by the U.S. Department of Commerce to comply with the Export Administration Regulations (EAR) to ensure complete compliance with the U.S. export controls.

On August 27, 2012, Imran returned the form as the Purchasing Manager for Brush Locker, falsely identifying Brush Locker at 209 Shelton Avenue, New Haven, CT, as the end-user

organization. On August 27, 2012, the manufacturer provided Imran with a quote for one Ortex Alpha Duo Spectrometer, among other items, and on September 3, 2012, Kamran forwarded the manufacturer's quote to Khalid. Throughout September and October 2012, Kamran and Khalid exchanged several email messages concerning the transaction, including an email message on September 26, 2012, that contained a spreadsheet detailing the transaction and potential profits. On September 26, 2012, Kamran also forwarded the information concerning costs and profits in the spreadsheet to Ismail. On October 4, 2012, Khalid advised Kamran to proceed with the transaction, stating: "Ok go ahead and Best of Luck."

On October 9, 2012, the manufacturer provided Imran a final quote for the Ortec Alpha Duo Spectrometer and other items in the amount of $26,331.38. On October 10, 2012, Imran provided the manufacturer a shipping address of "Brush Locker Tools Division" at 209 Shelton Avenue in New Haven, Connecticut (Cerda Market), and his home address as the billing address. On November 7, 2012, Kamran sent an email to Khalid, attaching an invoice from "Kauser Enterprises USA to "Kauser Enterprises, LA 6/B Block 22, F.B (IND) Area, Karachi, Pakistan" in the amount of $35,549.658. On November 12, 2012, Khalid emailed Kamran indicating that $35,549.66 was being wired transfer to Kauser Enterprises USA. On December 12, 2012, the Ortec Alpha Duo Spectrometer and related items were shipped to 209 Shelton Avenue, New Haven, Connecticut (Cerda Market). On December 18, 2012, Khalid instructed Kamran to send the "[Ortec Alpha Duo Spectrometer] shipment" to "NTS (Nano tech Solutions)" H. No. 269-B, Street No. 17, F-10/2, Islamabad, Pakistan. On December 31, 2012, Kamran forwarded the instructions to Imran. On January 4, 2013, Imran provided a "spectrometer tracking #" to Kamran ending in 5978. Kamran forwarded the information to Khalid. The 5978 shipment was sent on January 3, 2013, from New Haven to Islamabad, Pakistan. The shipment purported to originate from "Kauser Enterprises, USA LLC at 209 Shelton Avenue in New Haven, Connecticut." The shipment was purportedly addressed to "M/S Kauser Enterprises," but the destination address was the address provided by Khalid for Nano Tech Solutions, that is, H. No. 269-B, Street No. 17, F-10/2, Islamabad, Pakistan. The customs declaration identified the sender as Muhamaad Ismail, and falsely identified the contents of the package as a portable vacuum, a surge protector, and other accessories with a total value of approximately $470.

On January 11, 2013, Kamran sent an email to Khalid with an attachment needed in order for the shipment to be delivered. The attachment, on the letterhead of Kauser Enterprises, stated that the 5978 shipment in the name of "(M/S Kauser Enterprises H. No. 269-B, Street No. 17, F-10/2, Islamabad, Pakistan)" actually belongs to "Directorate of Technical Equipment" in Islamabad, which was "authorized" to receive the shipment on behalf of Kauser and clear it through customs. The Directorate of Technical Equipment is a subdivision of PAEC, an agency on the U.S. Department of Commerce Entity List; therefore, a license was needed prior to

exporting any item to PAEC. The defendant knew that he needed a license prior to export.

This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional relevant offense conduct to the Court in connection with sentencing.

Imran Khan
The Defendant

Jacabed Rodriguez-Coss
Assistant U.S. Attorney

James Maguire, Esq.
Attorney for the Defendant